UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KHALIL WILLIAMS,                              :

                  Petitioner,      :

             -against-             :    **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,        :         12 Civ. 5585 (LAP) (KNF)

                  Respondent.     :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE

      Khalil Williams ("Williams"), proceeding pro se, made a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside or otherwise correct his sentence. The respondent opposes the motion.

## BACKGROUND

      For a period of approximately five days in March 2008, Williams participated in a plan to steal televisions and other devices from an electronics store called Media Plaza located in Bronx County, New York.[1] The criminal activities at issue began on or about March 20, 2008, when Williams proposed the plan to an acquaintance, Mark Franco ("Franco"). Williams and Franco then recruited, inter alia, a neighbor with a van large enough to transport the televisions. After visiting the electronics store, Williams and his cohorts agreed to recruit "two shooters" and enlisted a friend of Williams to provide them. On March 25, 2008, the day of the planned robbery, Williams and Franco met with the others; together they agreed that the "two shooters" would enter the store

---

[1] The indictment in this case charged four individuals: Williams, Mark Franco, Robert Gonzalez and Rasheem Richardson.

first and hold up any employees at gunpoint. Williams and Franco provided the weapons, a pistol and a starter pistol that looked like a real gun, and hid them in Franco's car under the driver's side floor mat. Franco had also stocked the car with, among other things, duct tape for use in tying up individuals in the store, latex gloves and laundry bags. Officers and detectives of the New York Police Department, who had received information about the robbery plan, were waiting at the electronics store when Williams and his cohorts arrived; they arrested the participants, including Williams and Franco. The following day, police officers searched Franco's car and found the two guns hidden under the floor mat.

On July 22, 2008, Williams was charged in federal court with one count of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One), one count of attempting to commit a Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count Two), and one count of using and carrying a firearm during and in relation to a crime of violence, namely, the robbery conspiracy charged in Count One, and possessing a firearm in furtherance of that crime, in violation of 18 U.S.C. § 924(c) (Count Three).[2] Williams was also charged with being a felon in unlawful, willful and knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Five). Williams was tried before a jury and, on June 25, 2009, convicted of the first three counts. Williams was also convicted, by the Honorable Barbara S. Jones, of Count Five of the indictment, having waived his right to a jury trial with respect to that count and having stipulated to all the elements of that offense, except for possession of a firearm.

---

[2]The Hobbs Act provides that: "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined . . . or imprisoned . . . or both." 18 U.S.C. § 1951(a).

2

Williams did not testify at trial. Franco, who had pleaded guilty to a superseding information pursuant to a cooperation agreement, testified for the prosecution. On July 20, 2010, Judge Jones sentenced Williams to a term of 96 months' imprisonment, to be followed by a term of five years' supervised release, and imposed on him a mandatory special assessment in the amount of $400.

Williams appealed his sentence to the United States Court of Appeals for the Second Circuit, challenging: (i) the district court's denial of his pre-trial motion to suppress physical evidence; (ii) his conviction under 18 U.S.C. § 924(c) on grounds of sufficiency of the evidence; and (iii) the adequacy of the district court's jury instructions on the need to corroborate Franco's testimony as an accomplice and cooperating witness. In a summary order dated October 13, 2011, the Second Circuit Court of Appeals rejected Williams' claims and affirmed the judgment of the district court. See United States v. Gonzalez, 441 Fed. Appx. 31 (2d Cir. 2011).

On July 16, 2012, Williams filed the instant motion timely, under § 2255, seeking to set aside his sentence and remand his case for a new trial. Williams asserts that he was denied his Sixth Amendment right to the effective assistance of counsel because his lawyers, both at trial and on appeal, were deficient in that they failed to: (1) raise a challenge to the district court's allegedly erroneous instruction to the jury regarding the elements of Count Three of the indictment, as set forth at 18 U.S.C. § 924(c); and (2) object when the government failed to correct allegedly false testimony presented at trial by Franco, a cooperating witness.

## DISCUSSION

### *Legal Standard*

28 U.S.C. §2255 provides that:

3

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 provides further that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

As a form of collateral review, a § 2255 motion may not be used as a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982). Accordingly, "[w]here a petitioner does not bring a claim on direct appeal, he is barred from raising that claim in a subsequent section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (citations omitted). However, procedural default may not apply to a claim of ineffective assistance of counsel. See Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). This is so because a petitioner who raises a claim under § 2255 that was not brought up on direct appeal, but who makes a bona fide claim that counsel was ineffective, can still obtain § 2255 relief "on the theory that the ineffective assistance of counsel itself provides the 'cause' for the failure to appeal the issue." Rosa, 170 F. Supp. 2d at 396 (citations omitted).

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court established a two-part test to determine whether defense counsel's assistance was ineffective. First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." Id. at 688-89, 104 S. Ct. 2064-65. Second,

4

the petitioner must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94, 104 S. Ct. at 2067-68. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068.

When a claim is made that counsel has rendered ineffective assistance, a strong presumption exists that counsel's performance falls within the "wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. "Claims of ineffective assistance of appellate counsel are governed by the Strickland analysis." White v. United States, Nos. 11 CV 2696, 08 CR 360, 2012 WL 2119104, at *5 (S.D.N.Y. June 12, 2012).

### *Ineffective Assistance of Counsel Claims*

    A.  Jury Instructions

Williams contends that his trial and appellate counsel were ineffective because they failed to raise a challenge to the district court's allegedly erroneous jury instruction on Count Three of the indictment, which charged Williams with a violation of 18 U.S.C. § 924(c). Section 924(c) provides for an additional term of imprisonment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A).

Williams asserts that "[i]mmediately following the Government's summation during trial, the court instructed the jury [as] to the laws that were to govern their deliberation. The portion of those instructions at issue here . . . are those pertaining to count three of [the] indictment, the firearm offense, in which . . . Williams was sentenced to a mandatory minimum sentence of sixty (60) months."

Williams contends that "[s]ection 924(c) provides two separate standards of participation: the use and carrying of a firearm, during and in relation to, a violent or drug trafficking crime, and, possession of a firearm in furtherance of any such crime. The courts mix matched the standards of participation of the 'use' conduct, which is 'during and in relation to', with the 'possession' conduct, which has its own standard of participation [,] that is [,] 'in furtherance of.'" As a result of this error, which, Williams argues, amounted to an impermissible constructive amendment of the indictment, "the jury might have found [him] guilty of an offense - possession of a firearm during and in relation to a violent crime . . . that is not criminalized by § 924(c)."

Williams argues further that, in instructing the jury on the final element of the offense, the court failed to mention possession conduct. "Furthermore, the jury could not have believed that the government proved each of the [elements] for possession of a firearm, beyond a reasonable doubt, thus convicting [] Williams of count three, when the only three [elements] given were in support of the 'use' conduct of count three." Williams concludes that "there is a substantial chance that [he] was prejudiced and his right to due process of law was violated and he was convicted by a lesser standard than . . . [proof beyond a reasonable doubt] since there [were] only three elements that the court[] instructed the jury on regarding count three, all pertaining to the 'use' of a firearm." Since defense counsel "failed to object to, or challenge these plain errors in their post-trial and appeal motions, so as to avoid any further prejudice the courts must vacate, or set aside the sentence for count three of [] Williams' indictment [and] remand[] the case back to district court for a new trial."[3]

---

[3]In this part of his memorandum of law in support of the petition, Williams also contends

(continued...)

6

The respondent contends that the district court properly instructed the jury on Count Three and, hence, that Williams' counsel was not ineffective under Strickland for failing to object to the jury instructions at trial or to raise the issue on appeal.

As a preliminary matter, since Williams failed to raise this argument on direct appeal, he is barred from raising it in this motion, unless he can show cause for this failure. As noted earlier, ineffective assistance of counsel may constitute cause for such a procedural default. However, Williams cannot demonstrate that either his trial or appellate counsel were constitutionally ineffective and, therefore, counsel's performance cannot serve as an excuse for his failure to raise a challenge to the district court's jury instructions in his direct appeal.

In a circumstance where appellate counsel is the subject of the ineffective assistance claim, it must be remembered that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 835 (1985) (citation omitted) (emphasis in the original). See United States v. Cordoba-Bermudez, 4 F. Supp. 3d 635, 640 (S.D.N.Y. 2014) ("On direct appeal, counsel did not act unreasonably by 'omit[ting] significant and obvious issues while pursuing issues that were clearly and significantly weaker.'") (quoting Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994)). In this case, as noted earlier, Williams' counsel raised three claims on direct appeal:

---

³(...continued)
that there was "insufficient evidence during trial [] to prove that [he] or any of his co-defendants used a firearm, in [the] context of 924(c)(1)(A), in the instant offense." This claim was raised on direct appeal and disposed of by the Second Circuit Court of Appeals in its October 13, 2011 summary order. See Gonzalez, 441 Fed. Appx. 31, at *35-36 (noting that the district court had instructed the jury on three theories of liability, including a Pinkerton theory, and finding that "the evidence was sufficient to convict the defendants on a Pinkerton theory"). Since this claim was raised and considered on direct appeal, it may not be relitigated on this § 2255 motion. See United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997).

7

(i) the district court erred when it denied Williams' pre-trial motion to suppress physical evidence; (ii) there was insufficient evidence to convict Williams under 18 U.S.C. § 924(c) on a Pinkerton theory; and (iii) the district court provided an inadequate jury instruction on the need to corroborate Franco's testimony as an accomplice and cooperating witness.

Williams has not shown that these claims were "clearly and significantly weaker" than his claim concerning the district court's jury instruction on Count Three.  Furthermore, for the reasons discussed below, Williams cannot demonstrate that the jury instruction at issue was erroneous.  When appellate counsel is faulted for failing to raise a particular claim on direct appeal, if that claim is not meritorious, there can be no merit to the claim that appellate counsel should have raised it.

Where, as here, a defendant fails to object to the district court's jury instructions at trial, those instructions are reviewed for plain error that affected a substantial right.  See United States v. Middlemiss, 217 F.3d 112, 121 (2d Cir. 2000).  "Reversal is required if the unpreserved error is plain, 'affects a substantial right,' and 'seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'"  Id. (quoting United States v. Zvi, 168 F.3d 49, 58 (2d Cir.), cert. denied, 528 U.S. 872, 120 S. Ct. 176 (1999)).  See Xiang v. United States, No. 09 Civ. 7579, 2010 WL 3155052, at *5 (S.D.N.Y. Aug. 6, 2010) ("The alleged errors in [the petitioner's] jury instructions do not rise to a level of constitutional error and thus are not grounds for habeas relief." (citing Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001)).

In this case, the petitioner has not shown that the jury instructions given by the district court with respect to Count Three of the indictment were erroneous or amounted to plain error. Tracking the indictment, Judge Jones stated: "Now this count reads in part: On or about March 25, 2008, in the Southern District of New York, and elsewhere . . . the defendants, and others,

8

known and unknown, unlawfully, willfully, and knowingly, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States; namely, the robbery conspiracy charged in Count One of this indictment, did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying and possession of a firearm, to wit . . . Williams . . . possessed a .45 caliber semi-automatic pistol."

The jury was then instructed on the applicable law: "Now, the relevant statute here provides that any person who, during and in relation to any crime of violence for which he may be prosecuted in a court of the United States, uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm, commits a crime." Next, the court advised the jurors that they could only consider Count Three if they first found that the defendant was guilty of the robbery conspiracy charged in Count One. The jury was then instructed on the elements of the offense, as follows:

> Now, let me tell you what the elements of this offense are. The government must prove the following elements beyond a reasonable doubt:
> First, that on or about the dates alleged in the indictment, the defendant you are considering used or carried or possessed a firearm or any combination of those acts.
> Second, that the defendant used or carried the firearm, or aided and abetted the use or carrying of the firearm, during and in relation to a crime of violence; here, the robbery conspiracy charged in Count One, or that the defendant possessed a firearm in furtherance of that crime.
> Third, that the defendant acted knowingly, unlawfully and willfully.

Contrary to Williams' contention, this instruction is consistent with the language of the statute and clearly links the "use" and "carry" conduct with the "during and in relation to" standard of participation, and the "possession" conduct with the "in furtherance of" standard of participation. See Xiang, 2010 WL 3155052, at *5. Thus, no basis exists for Williams' contention that the court "mix matched" the standards of participation such that the jury might

9

have found him guilty of an offense not criminalized by the statute.

On the contrary, after stating the elements of the offense, Judge Jones provided a detailed explanation of the meaning of the key terms. Thus, Judge Jones discussed the meaning of "firearm" under the statute, stating: "A firearm . . . means any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Judge Jones also defined the term "use" stating, in pertinent part: "in order to prove that a defendant used the firearm . . . the government must prove beyond a reasonable doubt an active employment of the firearm by that defendant during and in relation to the commission of the crime of violence." The jury was instructed that this "does not mean that th[e] defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displays or even referring to the weapon . . . all constitute use of the firearm. The mere possession of a firearm at or near the site of the crime without active employment as I just described it is not, however, sufficient to constitute use of the firearm."

In defining the term "carry," Judge Jones stated, in pertinent part: "In order to prove that the defendant carried the firearm, the government must prove beyond a reasonable doubt that the defendant had the weapon within his control so that it was available in such a way that it furthered the commission of the crime."

The jury was also instructed concerning the concept of possession: "possession of the firearm in furtherance of a crime of violence requires that the defendant possess a firearm and that his possession advance or move forward the crime. The mere presence of a firearm is not enough. Possession in furtherance requires that the possession be incident to and an essential part of the crime. The firearm must have played some part in furthering the crime in order for this element to be satisfied." Judge Jones went on to explain the difference between actual

10

possession and constructive possession and to give examples of each of these types of possession. Thus, the instruction was not erroneous and no "constructive amendment of the indictment" occurred, as Williams has alleged.

Williams observes correctly that in the subsequent discussion of the final element of the offense, Judge Jones failed to include a reference to possession conduct, focusing instead on the "use" and "carry" forms of conduct. This portion of the jury instruction states, in relevant part:

> Now, the final element the government must prove beyond a reasonable doubt on the firearm count is that the defendant you are considering knew that he was carrying or using a firearm, or aiding and abetting the carrying or use of a firearm and that he acted willfully in doing so.

The emphasis in this portion of the jury instruction is on what it means to say that a person acted knowingly:

> Now, an act is done knowingly if done purposefully and voluntarily as opposed to mistakenly or accidentally. And you will recall I instructed you earlier that to determine someone acted knowingly requires you to make a finding as to that person's state of mind. In order for the government to satisfy this element, it must prove that the defendant knew what he was doing; for example, that he knew that he was carrying or using a firearm in the commission of a crime of violence.

Under the circumstances, the Court is not persuaded that the omission of a reference to possession conduct in this passage, in which the emphasis is on the significance of finding that an act is done knowingly, constitutes error. However, even if the instruction omits, erroneously, reference to possession conduct, any error was harmless. Williams has not shown that the alleged error affected a substantial right or "by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400 (1973).

11

For the reasons set forth, Williams has not shown that trial counsel rendered ineffective assistance by failing to object to Judge Jones' jury instructions at trial or that appellate counsel was ineffective for failing to raise the issue on appeal. Moreover, Williams' arguments fail because he cannot prove prejudice by showing that, but for counsel's errors, the result of the proceeding would have been different and, thus, cannot satisfy the prejudice prong of Strickland.

B.    Perjurious Testimony

Williams contends that trial counsel was ineffective for failing to object when the prosecution failed to correct allegedly false testimony provided by cooperating witness Franco, and that appellate counsel was ineffective for failing to raise the issue on appeal. According to Williams, Franco was a material witness whose "purpose at trial was to confirm the alleged Hobbs Act Conspiracy and convey to the jury 'first hand knowledge' of what allegedly transpired on or about March 25, 2008." However, Williams contends, although Franco provided "critical information that established a conspiracy amongst the defendant and others, to use a firearm and to rob an electronics store . . . Franco's testimony was riddled with falsehoods . . . which the government knew of, or should have known of, since they used certain documents . . . to substantiate what [] Franco testified to."

Williams asserts, in support of his claim, that Franco testified that on the evening of March 20, 2008, following a meeting between Franco and Williams during which the plan to steal televisions from Media Plaza was discussed, Franco received a telephone call from Williams "requesting that he come into his building's hallway so that [they] could talk." Additionally, according to Williams, Franco testified that during that meeting, Williams received a telephone call from a person named Marcel, also known as Sell or Cell, who informed Williams that he had found "two shooters" willing to participate in the planned robbery.

12

Williams contends that Franco testified that Williams then received four more calls from Marcel.

However, Williams argues, "a complete examination of the phone records show[s] that [] Franco was lying, and that the phone calls he spoke of do not exist." According to Williams, the telephone records introduced into evidence at trial by the government reflect only one call between him and Franco, at 3:00 p.m. on March 20, 2008, long before the meeting in the hallway of Franco's building. Moreover, Williams asserts, the telephone records reflect only two calls between Marcel and Williams on March 20, 2008: one at 9:15 p.m., which was an approximately 260 second call from Williams to Marcel that was directed to voicemail; and one at 9:18 p.m. which was a four-second call from Marcel to Williams which failed to connect. According to Williams, "[t]his in itself should be enough to show that the government knew . . . that Franco had testified falsely about the very foundation of the conspiracy, the recruitment of individuals that were to commit violent acts."

Williams alleges further that Franco, when asked who had told him to get a firearm from his house, responded that Williams told him to do so; however, during a proffer session with the government on April 11, 2008, Franco stated that Robert "Big Man" Gonzalez had told him to get the firearm. Additionally, according to Williams, during direct and cross examination, "Franco was asked if a guy named Camacho, and Camacho's girlfriend were involved in the overall robbery scheme . . . [and] responded that they were involved." However, during the proffer session on April 11, 2008, Franco stated that Camacho and his girlfriend were not involved in the robbery. Williams asserts that "[t]hese are just a few of the lies that [] Franco told during the trial" that the government knew were lies yet failed to correct. Williams contends that the government would have been unable to prove his guilt beyond a reasonable doubt without Franco's testimony, and since both trial and appellate counsel failed to object to

13

the government's misconduct in neglecting to correct Franco's alleged false testimony, they were ineffective and, therefore, violated Williams' constitutional rights.

The respondent contends that Williams' claim is meritless because he fails to establish that Franco actually committed perjury. Moreover, the respondent argues, even if Franco did commit perjury, the perjury was disclosed during trial and presented to the jury through cross examination. Furthermore, the respondent argues, the alleged perjurious testimony identified by Williams was not material to his conviction and there is no reasonable likelihood that, even if Franco's testimony was false, it affected the result of trial.[4]

Williams has submitted a reply memorandum in which he reasserts his claim of ineffective assistance of counsel based on the alleged failure to object to perjurious testimony by a government witness.

"A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013) (citations and internal quotation marks omitted). "Nevertheless, [r]eversal of a conviction based upon allegations of perjured testimony should be granted only with great caution and in the most extraordinary circumstances." United States v. Zichettello, 208 F.3d 72, 102 (2d Cir. 2000) (citations and internal quotation marks omitted).

"In order to be granted a new trial on the ground that a witness committed perjury, the

---

[4]The respondent also contends that the claim is procedurally barred because Williams did not raise it on direct appeal and, hence, is barred from raising it in this motion, unless he can show cause for this failure. As noted earlier, ineffective assistance of counsel may constitute cause for such a procedural default. However, as explained below, Williams cannot establish such cause because, with respect to his claim of perjurious testimony, he cannot demonstrate that either his trial or appellate counsel were constitutionally ineffective.

14

defendant must show that (i) the witness actually committed perjury. . . ; (ii) the alleged perjury was material . . .; (iii) the government knew or should have known of the perjury at [the] time of trial . . .; and (iv) the perjured testimony remained undisclosed during trial." United States v. Josephberg, 562 F.3d 478, 494 (2d Cir. 2009) (citations and internal quotation marks omitted).

With respect to the first prong, "[d]ifferences in recollection do not constitute perjury, and when testimonial inconsistencies are revealed on cross-examination, the jury is entitled to weigh the evidence and decide the credibility issues for itself." Id. (citations and internal quotation marks omitted). "It is the task of the jury as the appropriate arbiter of the truth to sift falsehoods from facts and determine whether an inconsistency in a witness's testimony represents intentionally false testimony or instead has innocent provenance such as confusion, mistake, or faulty memory." Id., at 494-95. (citations and internal quotation marks omitted).

Williams' arguments fail to meet the criteria for showing perjury. Williams contends, among other things, that Franco provided false testimony at trial because he described telephone communications between him and Williams, and between Williams and Marcel, that were not reflected in telephone records introduced into evidence by the government.

The record shows that Franco testified at length and in detail about his meeting with Williams on March 20, 2008, beginning with an account of their encounter on the street as Franco was coming home from work, and including testimony about their plan to commit robbery, the recruitment of other participants and their initial visit to Media Plaza. (Tr. 593-605).[5] During this testimony, Franco stated, inter alia, that the meeting with Williams took place on the "Thursday before the robbery at about 3:00, 3:30 p.m. in the afternoon" (Tr. 594) and that

---

[5]"Tr." refers to the trial transcript.

the visit to Media Plaza took place "I would say it was probably 5:00 in the afternoon, 5:30." (Tr. 603).

Franco testified that, after the visit to Media Plaza: "I was in my house, I get a phone call from Kah [Williams] later that night to come out to the hallway and talk." (Tr. 635). Franco testified further that Williams reported to him that he had just spoken to Marcel and that "[h]alf hour, 45 minutes later, I'm not sure of the time, Marcel calls Khalil Williams back on the phone and Williams is telling him [Franco] everything that Marcel is saying, that he's in front of the store and that it looks good, it looks good to go." (Tr. 637).

Williams is correct that the telephone records introduced into evidence by the government do not reflect any calls between Williams and Franco after 3:00 p.m. on March 20, 2008, and reflect only two calls between Williams and Marcel, one of which went to voice mail.[6]

Notwithstanding this discrepancy, however, Franco's testimony regarding the events of March 20, 2008, taken as a whole, suggests that the erroneous statements in question do not constitute perjury because they do not rise to the level of "false testimony concerning a material matter [given] with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (citing United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993)). As noted above, throughout this part of his testimony, Franco's references to time are tentative and he acknowledges his uncertainty in this regard. However, "[s]imple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." Monteleone, 257 F.3d at 219. Moreover, insofar as there were discrepancies between the documentary

---

[6]Copies of the telephone records are attached as an exhibit to Williams' petition.

evidence presented at trial and Franco's testimony, the jury was entitled to "weigh the evidence and decide[] credibility issues for itself." Josephberg, 562 F.3d at 494.

Williams' allegations of perjury based upon inconsistencies between Franco's testimony concerning participation in the robbery scheme of a person named Camacho and his girlfriend, and statements made by Franco during a proffer session with the government on April 11, 2008, are equally unpersuasive. On direct examination, Franco testified that he met with Williams on the day before the robbery and that "Camacho and his girl" joined them. (Tr. 642). Franco testified further concerning a meeting on the day of the robbery as follows:

> A. Everybody started meeting up around I would say seven o'clock, 7:15.
> Q. Who was the first to arrive?
> A. Me and Khalil Williams.
> Q. Who arrived next?
> A. Next was Camacho and his girl.

(Tr. 647).

Thereafter, Franco was questioned on cross-examination about Camacho and his girlfriend and whether, in a proffer session with the government, Franco had lied about their involvement:

> Q. Putting aside the Honda Accord, who was in the other van?
> A. Marcel, Camacho and Camacho's girl and White Boy.
> Q. Were all four of them involved, according to what you say today, in the plan to commit an attempted robbery?
> A. Yes, they were.
> Q. Did you lie to that – did you lie to Marissa Mole and Jillian Berman about that when you met with them in their offices on April 11 of 2008?
> A. No, I didn't.
> Q. On April 11 of 2008, did you tell the prosecutors that the woman and her boyfriend were not involved on the day of the robbery?
> A. No, I didn't.
> . . .

17

> Q: Did you also say that there was a woman there and her boyfriend at that meeting before going over to Bruckner Boulevard?
> A. Camacho and his girl, correct.
> Q. But did you say Camacho and his girl were not involved, not involved?
> A. No, I didn't.

(Tr. 822-823).

Defense counsel then showed Franco a note taken by one of the prosecutors during the April 11, 2008 proffer session; on the note was written, inter alia, "DAY OF ROBBERY" and the words "[woman] and her boyfriend (not involved)." The examination then continued:

> Q. Does that refresh your recollection of what you said about Camacho and his girlfriend not being involved?
> A. I don't remember saying that, no.
> Q. So if the prosecutors wrote that down, they somehow misunderstood what you were saying?
> A. It could have been a misunderstanding, yes.

(Tr. 825).

Based on this record, it does not appear that the inconsistencies between Franco's testimony at trial and his statements during the government' proffer session rose to the level of perjury. Franco acknowledged that there may have been a mistake or misunderstanding concerning the statements given by him during the proffer session but insisted that he had not lied and that his testimony at trial was truthful.

As for Franco's allegedly false testimony concerning who asked him to retrieve the firearms from his home on the day of the attempted robbery, Franco testified that Williams told him to "go get" a gun from upstairs. (Tr. 666). However, on cross examination, when he was asked whether he had previously told prosecutors that Gonzalez, not Williams, had directed him to retrieve a firearm, Franco acknowledged his error:

18

> Q. In one of the earlier meetings you had with [the prosecutors], you told them in that statement that Mr. Gonzalez asked you for the gun, is that right?
> A. I'm not sure.
> Q. Well, he never asked you for the gun that night, right, March 25?
> A. He asked what we were going to use.
> Q. Did he say to you, "Go get me the gun"?
> A. Did he say to me? No.
> Q. He didn't tell you go get the four-fifth or anything like that?
> A. No, he didn't.

(Tr. 813-814)

When shown notes of his meeting with the prosecutors in which the prosecutors stated that Franco told them that Gonzalez had asked him for the gun, Franco insisted that his statement was "not a blank out lie." Rather, he stated: "I probably came out a little confused at that time. It was probably the first meeting, and emotions and everything, but to lie, no." (Tr. 814).

Although there were discrepancies between Franco's testimony at trial and the statements he made to prosecutors prior to trial, these were appropriately left to the jury to consider, "sift falsehoods from facts" and determine whether the inconsistences in Franco's testimony represented "intentionally false testimony or instead ha[d] innocent provenance such as confusion, mistake, or faulty memory." Josephberg, 562 F.3d at 495. Moreover, even if the discrepancies show that Franco "actually committed perjury," Williams cannot satisfy the fourth element of the Josephberg test, since all of the allegedly perjured testimony was disclosed during the trial. In any case, since the allegedly perjured testimony was fully exploited by defense counsel, Williams cannot establish ineffective assistance of trial counsel, or demonstrate that appellate counsel rendered ineffective assistance by not raising the issue on appeal. Therefore, Williams is not entitled to any relief on the basis of the allegedly perjured testimony of the government's witness.

## RECOMMENDATION

For the reasons set forth above, I recommend that Williams' motion be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 2220, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
January 5, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Khalil Williams